# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

DAVID E. PORTER, et al., )
　)
　　　Plaintiffs, )
　)
v. ) No. 3:06-CV-1
　) (Phillips)
BULL MOUNTAIN DEVELOPMENT CO., et al., )
　)
　　　Defendants. )

## MEMORANDUM AND ORDER

This is an action to recover on promissory notes issued by defendant Bull Mountain Development Company, and to recover coal royalties under agreements with defendant BMP Investments, Inc. Plaintiffs have moved for summary judgment. Because there are disputed issues of fact as to the claims in this case, plaintiffs' motion will be denied.

### Background

The events giving rise to this litigation began in 2001. At that time, John Baugues, a principal of Bull Mountain Land Company, LLC, an affiliate of defendants, met Joseph Dickey through a mutual acquaintance. At the time, Dickey was a principal in the consulting firm FGS & Associates, LLC.

FGS contracted with Bull Mountain Land Company to perform services related to the feasibility of constructing a coal-fired electric plant in Montana near Bull Mountain's property. FGS originally agreed to do this work in exchange for a royalty of 10 cents (10¢) per ton of coal mined on Bull Mountain's property. Bull Mountain Development Corporation (BMDC) was formed in 2002, with Dickey becoming its twenty percent (20%) owner and president. The plan was for BMDC, with Dickey's help, to obtain the permits, contracts and other approvals that would be needed to commence the power plant project. Once the approvals were obtained by BMDC, Dickey hoped to find a third-party that would purchase, for a substantial sum, the permits for and right to pursue the power plant project.

Throughout 2002, FGS performed work and incurred expenses related to obtaining the necessary approvals and permits for the power plant project, for which it rendered monthly invoices to defendants. The amount due on the FGS invoices grew to approximately $1,300,000 by February 2002. Defendants could not pay FGS and this resulted in FGS having to pay subcontractors using its own funds. In January 2003, Dickey and John Baugues began to discuss the possibility of soliciting loans from individuals to raise the funds needed to pay FGS's subcontractors. Because they knew that the money had to be raised quickly, they agreed to offer potential lenders an extra incentive to induce them to lend money to BMDC.

Dickey and Baugues decided to offer potential lenders the right to choose between two different incentives. In addition to a fifteen percent (15%) interest rate, lenders could choose to receive either (1) a bonus payment on the due date of their loan

equal to the full principal amount of their loan, or (2) an eighty (80) year royalty on coal sales from the mining of 4,216 acres of land held by BMP Investments. All plaintiffs chose a coal royalty.

Each of the notes executed by FGS in favor of the plaintiffs in early 2003 provided for interest at the rate of fifteen percent per annum. Dickey at the same time arranged for defendant BMP to execute Overriding Royalty Agreements in favor of each of the note holders as the "extra inducement" for the loans evidenced by the FGS notes. BMP investments asserts it received no consideration in exchange for the royalty agreements beyond the loans to FGS. Defendant BMP made payments to the plaintiffs in accordance with the formulas provided for under the Overriding Royalty Agreements, until August 2004.

When the original FGS notes came due in late 2003, Dickey approached lenders about renewing those notes and rolling the unpaid 15% interest into the principal balance of their respective loans. Plaintiffs Dixon, Evans, Jorgensen, Morrison and Warren (the "Non-Note plaintiffs")insisted on repayment of their loans and were repaid in full with interest at the 15% stated rate on the face of their notes. The Note Plaintiffs agreed to a renewal; some agreed to roll accrued interest into the renewal, and others agreed to renew on the condition that previously accrued interest be paid at the time of renewal. Those who demanded an interest payment (Washington and Murphy) received payment based on accrual at a rate of 15%. Those who agreed to roll the interest into the renewal note (Porter, Chang, Dowgielewicz, EPOD, Laliberte, Voight and Watts) received notes that

included in their principal amounts capitalized interest on the original FGS Note balances at the rate of !5% per annum.

BMDC executed the renewal notes to the Note Plaintiffs. The BMDC notes provide that BMDC will pay interest on the principal amount of the notes at 15% per annum. The notes also provide that "in no event and under no circumstances shall the Borrower be liable for the payment of interest in excess of the maximum rate permitted by such applicable law, from time to time in effect." While BMDC obtained the necessary permits to build the Montana power plaint in 2003, no third-party has purchased the rights to develop this plant. Defendant BMDC has not paid in full the amounts due under the BMDC notes.

Plaintiffs Porter, Chang, Dowgielewicz, EPOD, Inc., Laliberte, Murphy, Voight, Washington and Watts (the Note Plaintiffs) have sued to recover amounts due in respect of the loans evidenced by the promissory notes issued by BMDC. In addition, all plaintiffs sue to recover amounts due under the Overriding Royalty Agreements executed in favor of each plaintiff by Defendant BMP. These agreements, which purport to run for eighty years through 2083, were executed as an additional inducement for the loans plaintiffs originally made to FGS.

Plaintiffs have moved the court for partial summary judgment (1) establishing that the plaintiffs are entitled as a matter of law to recover from BMDC the principal amounts of the promissory notes sued on, together with the interest provided by applicable

law; and (2) establishing that the Overriding Royalty Agreements between plaintiffs and BMP Investments are binding obligations of BMP, and for an accounting of all royalties due plaintiffs under said agreements. Defendants have responded in opposition stating that there exist genuine issues of material fact (1) as to whether the underlying loans evidenced by the promissory notes were ever fully funded; (2) as to whether the promissory notes are usurious on their face, rendering the notes unenforceable; and (3) whether the Overriding Royalty Agreements are disguised agreements to pay additional usurious interest on the loans evidenced by the promissory notes.

## Analysis

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

There is no dispute that defendant BMDC issued and delivered the promissory notes that the plaintiffs seek to enforce. Nor do defendants deny the authenticity of the Overriding Royalty Agreements entered into by BMP Investments. Instead, defendants assert that BMDC did not receive loan proceeds or other value to the extent of the total principal amount of the promissory notes sued on, and they argue that BMDC has a defense of failure of partial or total consideration affecting the enforceability of the Overriding Royalty Agreements and the Security Agreements. The defendants also plead usury as a defense to enforceability of the promissory notes and Overriding Royalty Agreements.

Usury has four elements: (1) a loan or forbearance, either express or implied; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than allowed by law; and (4) an intention to violate the law. *Jenkins v. Dugger,* 96 F.2d 727, 729 (6th Cir. 1938) (applying Tennessee law). The intention to violate the law, as a necessary element of usury, may be implied if the other elements are present. *Id.*. A contract is usurious "when there is any contingency whereby a lender may get more than the lawful rate of interest. It does not depend on whether the lender actually gets more than is lawful, but whether there was a purpose to obtain more than legal interest for the use of his money, and whether the terms of the transaction and the means used to effect the loan are appropriate to that end." *Id.*

In this case, plaintiffs have sought to recover profit on their underlying loans in the form of interest payments at a stated rate of 15% per annum plus royalty payments under the Overriding Royalty Agreements. Whether a contract requires the payment of usury "on its face" depends on whether usury can be identified from the terms of the contract and knowledge of the law, or whether it must be established through additional evidence. The burden is on the borrower to show that the loan is usurious. *Williams v. Personal Finance Co.,* 109 S.W.2d 1166 (1937).

Under the express terms of each Note, BMDC is not liable for any payment of interest over the maximum allowed by law. Paragraph Eight of each BMDC Note includes the following provision:

> In the event that a court of competent jurisdiction shall finally determine that any rate of interest which this Note bears is usurious under applicable law, then such rate automatically shall be reduced to the highest rate allowed by applicable law, and all excessive interest payments on this Note made prior to such decision shall be automatically be deemed to have been applied to principal instead.

Additionally, the last paragraph of each Note provides that "in no event and under no circumstances shall the Borrower be liable for the payment of interest in excess of the maximum rate permitted by such applicable law, from time to time in effect." Tenn. Code Ann. § 47-14-117(a) states that "any contract which on its face requires the payment of usury or excess loan charges, commitment fees, or brokerage commissions shall not be enforceable, but the original lender or creditor may sue to recover the principal actually advanced, plus lawful interest, loan charges, commitment fees, and brokerage commissions." Based on the record submitted by the parties, the court does not have

sufficient information before it to undertake an analysis of defendant's defense of usury as to the promissory notes. Nor can the court find that plaintiffs are entitled to judgment as a matter of law on the promissory notes. The parties have presented differing issues of fact regarding the validity of the promissory notes and the rate of interest thereon. Thus, determining the amount of principal and interest properly due on the BMDC notes involves disputed questions of fact, and a trial will be necessary for plaintiffs to prove the amount of their loans and the lawful interest thereon. Accordingly, plaintiffs' motion for summary judgment as to the promissory notes will be denied.

Next, defendants argue that the Overriding Royalty Agreements are nothing more than additional, usurious interest on plaintiffs' loans. Apart from the loan proceeds, defendants argue, there was no separate consideration furnished by the lenders in exchange for the FGS Notes, their successor BMDC Notes, or the Overriding Royalty Agreements from BMP Investments. There also appear to be material questions of fact as to the intent of the parties for the issuance of the Overriding Royalty Agreements. These royalty obligations were granted to plaintiffs as an added inducement and compensation for making their loans. As stated above, the record does not contain sufficient information for the court to determine, as a matter of law, that the Overriding Royalty Agreements, constitute additional interest for the promissory notes, and if so, whether that additional interest is usurious. Trials exist to resolve such questions of fact. Accordingly, plaintiffs have failed to show that they are entitled to judgment as a matter of law as to the Overriding Royalty Agreements.

Additionally, defendants claim that questions of fact exist as to whether they received consideration for the loans. Defendants admit that each plaintiff made a loan at some point, but contend that the principal amount of the notes on which plaintiffs sue includes not only loaned money, but also capitalized interest at a usurious rate. Defendants argue questions of fact exist regarding the amount owed under the promissory notes, particularly since the notes may include excessive capitalized interest and since previous payments have been made to some plaintiffs. Under Tennessee law, the want or failure, in whole or in part, of the consideration of a written contract, may be shown as a defense, total or partial, as the case may be, in an action on such contract, brought by anyone who is not an innocent and *bona fide* holder. Tenn. Code Ann. § 47-50-104. A contract in writing is *prima facie* evidence of consideration. Tenn. Code Ann. § 47-50-103. While a party arguing failure of consideration carries the burden of overcoming this statutory presumption, in this case, BMDC has demonstrated a genuine issue of material fact as to whether defendants received adequate consideration for the Notes and the Overriding Royalty Agreements. Thus, there are material issues of fact regarding consideration for the loans and the Overriding Royalty Agreements, which make summary judgment in favor of plaintiffs inappropriate.

Last, in response to defendants' claims that the Overriding Royalty Agreements constitute additional, usurious interest, plaintiffs claim exemption under Tennessee's Equity Participation Statute, Tenn. Code Ann. § 47-2-102. Under the statute, an "equity participation" means a loan transaction in which the lender, in addition to interest

and other amounts received from the loan transaction, has a right to participate in the borrower's enterprise, such as the right to receive a percentage of the enterprises' revenues or sales. Tenn. Code Ann. § 47-24-101. Tennessee authorizes equity participation and provides that the consideration received by the lender in such a participation will not be deemed to be interest if certain conditions are met. Specifically:

> A lender shall have the right to participate in the borrower's enterprise or venture to such extent as may be set forth in a written agreement between the lender and the borrower; provided, that the original principal amount of the funds advanced to the borrower pursuant to the loan transaction shall be not less than Five Hundred Thousand Dollars ($500,000), or, alternatively, that there shall be contemplated to be a series of advances of money aggregating not less than Five Hundred Thousand Dollars ($500,000).

Tenn. Code Ann. § 47-24-102.

Although plaintiffs allege that there was contemplated to be a series of advances of money aggregating not less than $500,000, defendants argue that the facts indicate that each loan transaction was a separate and independent transaction, such that the Equity Participation Statute does not exempt the royalty payments from Tennessee's usury statute. As with the previous arguments advanced by plaintiffs, material issues of fact exist as to whether the Overriding Royalty Agreements are equity participations exempted from claims of usury under the Tennessee Equity Participation Statute. At this stage in the proceedings, the court is without sufficient information to make such a determination. Accordingly, plaintiffs' motion for summary judgment will be denied in all respects.

Conclusion

The plaintiffs in this case seek to recover under both a BMDC Note and the Overriding Royalty Agreements. As stated above, because material questions of fact exist as to defendants' liability on the notes and the Overriding Royal Agreements, plaintiffs are not entitled to summary judgment on the promissory notes or the royalty agreements. Moreover, questions of fact exist regarding whether defendants received the full consideration contemplated in exchange for their execution of the BMDC Notes and the Overriding Royalty Agreements. Accordingly, the court finds that plaintiffs are not entitled to judgment as a matter of law, and their motion for summary judgment [Doc. 38] is **DENIED.** The parties will prepare the case for trial.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge